# EXHIBIT A
# TO
# COMPLAINT FOR
# DECLARATORY JUDGMENT

## BBC Bill of Lading
www.bbc-chartering.com

| | |
|---|---|
| **Shipper (full style and address)**<br>LAMPSON INTERNATIONAL LLC<br>607 E. COLOMBIA DRIVE<br>KENNEWICK, WA 99336<br>USA | |
| **Consignee (full style and address)**<br>KVAERNER VERDAL A/S<br>HAMNEVEGEN 7<br>7650 VERDAL, NORWAY | **B/L No.** LONVER01    **Reference No.** |
| | **Vessel** BBC KIBO   BN: 11-536   VOY. 55-609-02 |
| **Notify Party (full style and address)**<br>KVAERNER VERDAL A/S<br>HAMNEVEGEN 7<br>7650 VERDAL, NORWAY | **Port of loading** (Carrier's berth unless otherwise specified)<br>LONGVIEW, WA |
| | **Port of discharge** (Carrier's berth unless otherwise specified)<br>VERDAL, NORWAY |

### PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER

| Container No./Seal No./Marks and Numbers | Number and kind of packages; description of cargo | Gross weight, kg SAID TO WEIGH | Measurement, m³ SAID TO MEASURE |
|---|---|---|---|
| | SAID TO BE<br><br>158 PCS CONSISTING OF 1 KD LAMPSON MODEL LTL-2600B TRANSI-LIFT C/W 400' MAIN BOOM 200' JIB<br><br>S/N:<br>2600-039<br>97-2-83W<br>97-3-84W<br>2000-73<br>2000-53<br><br>FREIGHT PREPAID<br>ON BOARD THE BBC KIBO AT LONGVIEW, WA ON DECEMBER 19, 2011<br><br>NO SED REQUIRED: AES ITN NO.: X20111128041573<br><br>"THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. ULTIMATE DESTINATION NORWAY DIVERSION CONTRARY TO U.S. LAW PROHIBITED."<br><br>67,37,116,117,118,19,21,79,93,36,112,113,32,11 ARE CARRIED ON DECK AT SHIPPER'S / CHARTERER'S/ RECEIVER'S RISK AS TO PERILS INHERENT IN SUCH CARRIAGE, ANY WARRANTY OF SEAWORTHINESS OF THE VESSEL EXPRESSLY WAIVED BY THE SHIPPER / CHARTERER / RECEIVER, AND IN ALL OTHER RESPECTS SUBJECT TO THE PROVISIONS OF THE UNITED STATES CARRIAGE OF GOODS BY SEA ACT, 1936<br><br>**ORIGINAL** | 1,784,410 KGS | |

**SHIPPED** on board in apparent good order and condition (unless otherwise stated herein) the total number of Containers/Packages or Units indicated above and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight as indicated to the right plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant (as defined hereinafter, Clause 1) expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant. One original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void.
IN WITNESS whereof the Carrier, Master or their Agent has signed the number of original Bills of Lading stated below right, all of this tenor and date.

| | |
|---|---|
| **Shipper's declared value** XXX | **Declared value charge** XXX |
| **Freight details and charges** FREIGHT PREPAID | |
| **Daily detention rate** (Special Clause A) / **Demurrage** (Clause 10) | |
| **Special terms as per Booking Note dated:** | |

| Carrier's name / principal place of business (If BBC is not listed as the Carrier, BBC is acting as Agents only)<br>BBC CHARTERING & LOGISTIC GMBH & CO. KG<br>HAFENSTR. 12<br>LEER 26789 · GERMANY | **Date shipped on board**<br>DECEMBER 19, 2011 | **Place and date of issue**<br>HOUSTON, TX, DECEMBER 19, 2011 |
|---|---|---|
| | **Number of original Bills of Lading**<br>3 / THREE | |

| Signature of the Carrier or for the Carrier Name and Signature of Master / Agent<br>BBC CHARTERING USA, LLC AS AGENTS FOR AND ON BEHALF OF CAPT. HARALD WEYRICH THE MASTER OF THE "M/V BBC KIBO"<br><br>BBC Chartering USA, LLC - Agents -<br>8565 West Loop South - Suite 200<br>77401 Bellaire · Texas · USA<br>www.bbc-chartering.com | **Pre-carriage by*** XXX |
|---|---|
| | **Place of receipt by pre-carrier* / Place of delivery by on-carrier*** XXX |

*Applicable only when pre-/on-carriage is arranged in accordance with Clause 9

© 2011 BBC Chartering · Version: January 2011 (A4)

# BBC Bill of Lading Terms and Conditions

**1. Definition**
"Merchant" includes the charterer, the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification**
(a) Should the Carrier anticipate that, for whatever reason, the vessel will not be ready to load the cargo by the end of the shipping period, it will notify the Merchant thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Merchant will exercise its option of cancelling the carriage, or agree to a new shipping period.
(b) Such option must be exercised by the Merchant within 48 running hours after the receipt of the Carrier's notice. If the Merchant does not exercise its option of cancelling, then the new shipping period shall apply.
(c) The provisions of sub-clause (b) of this Clause shall operate any time the Carrier requests amendment of the shipping period.

**3. Liability under the Contract**
(a) Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply. In respect of shipments to which there are no such enactments compulsorily applicable, the terms of Articles I-VIII inclusive of said Convention shall apply. In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23rd February 1968 ("The Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. Where the Hague Rules or part of them or the Hague-Visby Rules apply to carriage under this contract, the applicable rules, or part of them, shall likewise apply to the period before loading and after discharge where the Carrier (or his agent) have custody or control of cargo. Unless otherwise provided herein, the Carrier shall in no case be responsible for loss of or damage to deck cargo and/or live animals.
(b) The Carrier shall under no circumstances be liable for consequential damages or losses including damages for delay. In the event that the Carrier is held to be liable for damage or loss other than damage to the cargo, such liability shall in any event be limited to the freight covered by this bill of lading or to the limitation amount determined by sub-clause 3(a) or Special Clause B, whichever is lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, Special Clauses.

**4. Law and Jurisdiction**
Except as provided elsewhere herein, any dispute arising under or in connection with this Bill of Lading shall be referred to arbitration in London. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) terms. The arbitration Tribunal is to consist of three arbitrators, one arbitrator to be appointed by each party and the two so appointed to appoint a third arbitrator. English law to apply.

**5. The Scope of Carriage**
(a) The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading discharging or other cargo operations and maintenance of vessel and crew. The carrier shall have the liberty of restowing the cargo and loading and discharging other cargoes for the account of other Merchants for ports enroute or not enroute.
(b) Any deviation, change in discharge port or time lost due environmental hazards or to avoidance of same to be for Merchant's account and such deviation shall not be considered unjustified.

**6. Substitution of Vessel**
The Carrier shall be at liberty to carry the cargo or part thereof to the port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment**
The Carrier shall be at liberty to tranship, land and store the cargo either on shore or afloat and reship and forward the same to the port of discharge at Carrier's expense but at Merchant's risk.

**8. Lighterage**
Any lightering in or off ports of loading or ports of discharge to be for the risk and account of the Merchant.

**9. Liability for Pre- and On-Carriage**
When the Carrier arranges pre-carriage of the cargo from a place other than the vessel's port of loading or on-carriage of the cargo to a place other than the vessel's port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the port of loading and the port of discharge even though the freight for the whole carriage has been collected by him.

**10. Loading and Discharging**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent unless otherwise agreed or noted herein.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the vessel is ready to load and as fast as the vessel can receive, including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the vessel is ready to load or fails to load as fast as the vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for dead freight and/or any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 20,000 per day pro rata, payable day by day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction.
If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 20,000 per day pro rata, payable day by day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay. All delivery takes place at the end of the vessel's hook unless otherwise specified.
(f) The Merchants shall be responsible for providing all necessary equipment for loading and discharging, including spreader bars, lifting frames, slings and saddles.
(g) The securing of the cargo to be accomplished to Master's satisfaction. The time and expense of additional cargo securing required by the Merchant or Merchant's representative to be for Merchant's account.
(h) The Merchant shall accept his reasonable proportion of unidentified loose cargo.
(i) Cargo to be carried on terms liner in/free out, free in/liner out, free in/out shall be loaded and/or discharged (as applicable) by the Merchant free of any risk, liability, cost and expense whatsoever to the Carrier. The Merchant shall be liable to the Carrier for the negligence of the stevedores whom the Merchant shall appoint. Unless otherwise stated, demurrage shall be US $20,000 per day pro rata and payable day by day.
(j) Notice of Readiness may be tendered on arrival, at any time, day or night, all weekend days and whether in port or not, whether in berth or not, whether customs cleared or not, whether in free pratique or not.
(k) Should the vessel not be able to berth for any reason including congestion after 72 hours after arrival at or off the port, the Carrier has the option to sail the vessel and cancel this contract. If the terms are Free In or Merchants or Shippers' berth, the Merchant shall owe deadfreight. Should for any reason the Vessel be unable to discharge the cargo within 5 days of arrival at or off the discharge port, the Carrier shall be at liberty to deviate to any other port whatsoever and there discharge the cargo at the Merchant's expense and such alternative discharge shall be deemed to be fulfilment of the contract of carriage.

**11. Freight, Deadfreight, Charges, Costs, Expenses, Duties, Taxes and Fines**
(a) Freight, whether paid or not, shall be considered as fully earned and due upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing on board, repairing damage to and replacing of packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons. The Merchant shall be specifically liable for all costs, expenses, losses and liabilities incurred due to non-approved or contaminated or infested dunnage supplied by Merchants including all costs of transporting the cargo to another port, if required.
(c) The Merchant shall be liable for any dues, duties, taxes and charges that under any denomination may be levied, inter alia, on the basis of freight, weight or measurement of cargo or tonnage or classification of the vessel including all Suez or Panama canal charges.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses, damages and or losses that the Carrier, vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) Payments, including partial payments made pursuant this Contract are with prejudice, nonreturnable, and will be credited to the amount due. Acceptance of a partial payment under no circumstances waives the full amount due and owing.
(f) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of cargo to claim double the amount of freight that would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.
(g) Any additional insurance premium charged by vessel's underwriters for breaching trading limitations (INL) or war risk exclusions to be for Merchant's account. Any extra insurance procured (including war risks) or costs incurred to protect vessel, crew, and cargo against risk of piracy, rebels or terrorists shall be paid by Merchants upon request of Carrier.
(h) In the event that the Merchant fails for whatever reason to tender or load the cargo or part thereof, the Carrier shall be entitled to damages and/or deadfreight in respect of the cargo not loaded and such damages shall be quantified on the basis of the applicable freight rate, less stevedoring and port costs saved as a consequence. The Carrier shall not be required to call the loadport in order to be entitled to damages and/or deadfreight under this paragraph. If the vessel has arrived at the loadport but the cargo is unavailable for whatever reason, the Carrier may, at the Carrier's election, leave after 48 hours and full deadfreight shall be due.

**12. Lien**
The Carrier shall have a lien on all cargo for any amount due (including freight, detention, demurrage, and other costs or expenses) under this Contract and other contracts between the Merchant and the Carrier and costs of recovering the same (including attorney's fees) and shall be entitled to sell the cargo privately or by auction to satisfy any claims or liens at the specified discharge port or other port.

**13. General Average and Salvage**
(a) General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.
(b) If the Carrier decides not to declare General Average for whatever reason and the nature of the event was similar to one for which General Average could have been declared the Carrier will be entitled to reimbursement of his expenses from the Merchant on a pro rata basis of the cargo on board.

**14. Both-to-Blame Collision Clause (This clause to remain in force even if unenforceable in the Courts of the United States of America)**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**15. Government Directions, War, Epidemics, Ice, Strikes, Piracy, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any cargo on board to risk of seizure or damage or delay in consequence of war, warlike operations, blockade, riots, civil commotion or piracy, or any person on board to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port. The Master may in his absolute discretion decide to proceed in a convoy or a joint sailing with other vessels or to chose an alternative, non-direct route to protect the crew, vessel and cargo. Any time including waiting time thereby lost shall be for the account of the Merchant calculated at the detention/demurrage rate. Any additional costs including the additional cost of time lost sailing an alternate route (e.g., rounding Africa) shall be for Merchants account and shall be calculated at the detention or demurrage rate.
(c) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lockouts (whether on board or on shore), difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**16. Defences and Limits of Liability for the Carrier, Servants, Agents and Managers**
(a) It is hereby expressly agreed that no servant, agent or manager of the Carrier shall have any liability whatsoever to the Merchant or any other party under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant, agent or Manager of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant, agent or manager of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof including attorneys' fees.
(d) For the purpose of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.
(e) The provisions of this clause shall specifically apply, but not be limited to all independent contractors, brokers, stevedores, port captains, commercial and technical managers, and transportation providers employed by the Carrier.
(f) Any reference to a letter of credit or invoice number shall not be considered to be a declaration of value of the cargo. Unless the value of the cargo is declared by the Merchant in the appropriate box on the front of the Bill of Lading, the value of the cargo is unknown to the Carrier.

**17. Stowage**
(a) The Carrier shall have the right to stow by means of containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**18. Packaging**
The Merchant is responsible for providing cargo that is properly packed and internally secured for ocean transportation, and that all centres of gravity are marked, proper skids are attached and, if required, all cradles used for securing the cargo are fit for the purpose and the cargo is properly secured within the cradles. The Merchant shall fit the cargo and/or cradles as appropriate with suitable lifting lugs and sufficient lashing points for the cargo and/or cradle to be properly secured. If cargo is not flat at the bottom, the Merchant is to provide a detailed footprint sketch prior to loading. Any special dunnaging, spreader bars or other special equipment required is to be for the Merchant's account.

**19. Shipper-Packed Containers, Trailers, Transportable Tanks, Flats, Pallets and similar articles**
The Carrier shall not be responsible for loss of or damage to contents of a container whatsoever when the container has not been filled, packed or stowed by the Carrier. The Merchant shall cover any loss, damage or expense incurred by the Carrier when caused by negligent filling, packing or stowing of the container, or the contents being unsuitable for carriage in a container. The same applies with respect of trailers, tanks, flats, pallets and other similar articles of transport used to consolidate goods.

**SPECIAL CLAUSES**

**A. Detention**
In addition to Clauses 10(d) and (e), detention shall also be paid by the Merchant, at the same rate and day by day, for any delay in waiting for loading or discharge at or off the port or berth, including time lost due to swell or tide, shifting, renomination of the berth due to Merchant request, impossibility to leave the berth after loading or discharge is completed or any other reason and any consequences of thereof. The Merchant shall also be liable for any extraordinary costs while the vessel is on detention.

**B. U.S. Trade. Period of Responsibility**
(i) In case the Contract evidenced by this Bill of Lading covers a shipment to or from a port in the United States, including any US territory, the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA) shall apply. The provisions stated in said Act shall govern before loading, and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody. For US trades, the terms on file with the U.S. Federal Maritime Commission shall apply to such shipments. In the event that U.S. COGSA applies, then the carrier may, at the Carrier's election commence suit in a court of proper jurisdiction in the United States in which case this court shall have exclusive jurisdiction.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit. If, despite the provisions of 3(a), the Carrier is found to be liable for deck cargo, then all limitations and defenses available under US COGSA (or other applicable regime) shall apply and suit may be brought by the Carrier at the Carrier's election in the U.S. District Court of proper jurisdiction.

**C. Security Clause**
(i) If the vessel calls any country that requires security filing including but not limited to the United States, Brazil and European Union member states, including any of their territories, regardless whether this country is a port of loading or discharge for Merchant's cargo, the following provisions shall apply with respect to any applicable regulations or measures:
The Merchant shall provide the Carrier with all information needed for Security filing no later than 48 hours prior to vessel's loading or if the decision to call the country requiring security was made by the Carrier after the vessel had sailed not later than 48 hours after the Merchant received Carrier's request to provide such information.
(ii) Unless caused by the Carrier's negligence, any delay suffered or time lost in obtaining the entry and exit clearances from the relevant country's authorities shall count as time of detention.
(iii) Any fines, penalties, fees, costs, expenses, damages (including consequential damages and attorney fees) and losses that the Carrier may incur, even if levied against the vessel, that arise out of security measures imposed at any port shall be for the Merchants' account if not due to Carrier's negligence.

Complaint, Ex. A, Pg. 08

© 2011 BBC Chartering · Version: January 2011 (A4)